IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ADVANTAGE ENERGY JOINT VENTURE,[1] | § § | Case No.  17-34469-H4-11 |
| | § | (Chapter 11) |
| | § | (Involuntary) |
| ALLEGED DEBTOR. | § | |

**WOODFOREST NATIONAL BANK'S MOTION TO QUASH
SUBPOENA DUCES TECUM ISSUED BY WESTWIND RANCH, LP**
[This instrument relates to Docket No. 39]

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FUTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

Woodforest National Bank ("WNB"), the holder of secured claims against Advantage Energy Joint Venture (the "Putative Debtor"), files this *Motion to Quash Subpoena Duces Tecum Issued by Westwind Ranch, LP* (the "Motion") in response to the *Notice of Issuance of Document Subpoena to Woodforest National Bank* [Docket No. 39] (the "Subpoena") and respectfully states as follow in support thereof:

---

[1] EIN: xx-xxx3927

**WNB'S MOTION TO QUASH SUBPOENA**                                                                                    PAGE 1 OF 19
4831-0935-4829v.2
22510-35 8/22/2017

## I. JURISDICTION

1. The Court has jurisdiction to consider the relief requested in this Motion under 28 U.S.C. § 1334(b) and the standing order of reference of the District Court. This matter is a core proceeding under 28 U.S.C. § 157(b). The statutory predicates for relief are: (i) Rule 45(d)(3) of the Federal Rules of Civil Procedure ("FRCP" or the "Federal Rules"), made applicable to the above-captioned bankruptcy case (this "Bankruptcy Case") pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure ("FRBP" or the "Bankruptcy Rules"); (ii) FRCP 26(c)(1), 37(a)(5) and 37(d)(2), made applicable herein pursuant to FRBP 7026, 7037, and 9014; and/or, (iii) Rule 2004-1(f) of the Bankruptcy Local Rules ("BLR").

## II. SUMMARY OF RELIEF REQUESTED[2]

2. This Court should quash the Subpoena because of one primary, facial reason: failure of service. Because of this fatal defect, Westwind cannot enforce the Subpoena against WNB, and WNB requests that this Court enter an order quashing the Subpoena. In addition to the failure of service of the Subpoena, Westwind failed to identify the grounds on which it is entitled to issue the Subpoena to WNB. In the main case of a bankruptcy proceeding, a party-in-interest may issue a subpoena under FRBP 2004 or in connection with a contested matter.

3. To the extent that Westwind intends to rely upon FRBP 2004 as grounds for issuing the Subpoena, the Subpoena should be quashed for: (i) a failure of service, as stated above; (ii) an overly broad scope; and, (iii) failure to satisfy the requirements of BLR 2004-1. To the extent that Westwind instead intends to rely upon the only remotely contested matter in this Bankruptcy Case, *i.e.* the *Involuntary Petition Against a Non-Individual* [Docket No. 1] (the "Involuntary Petition"), as the contested matter related to which the Subpoena might issue, the

---

[2] Certain capitalized, undefined terms appearing in the Summary of Relief Requested are defined later in this Motion.

**WNB'S MOTION TO QUASH SUBPOENA**  PAGE 2 OF 19
4831-0935-4829v.2
22510-35 8/22/2017

Subpoena should be quashed for: (i) a failure of service, as stated above; (ii) an overly broad scope inclusive of communications irrelevant to the Involuntary Petition; and, (iii) an undue burden on a nonparty— WNB is not a Petitioning Creditor (defined below) under the Involuntary Petition nor has WNB joined the Petitioning Creditors in requesting the entry of an order for relief under the Involuntary Petition.

### III.   FACTUAL AND PROCEDURAL BACKGROUND

4.   On July 26, 2017 (the "Petition Date"), Consultants International Services LP ("Consultants") and Meredith Interests Consulting LP ("Meredith," and, together with Consultants, each a "Petitioning Creditor," and collectively, the "Petitioning Creditors") filed the Involuntary Petition initiating the above-captioned bankruptcy case (the "Bankruptcy Case") against the Putative Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On information and belief, the Putative Debtor continues to operate its business and manage its property. No request for the appointment of a trustee or examiner has been made in this Bankruptcy Case, and no statutory committees have been appointed or designated.

5.   The Putative Debtor is a joint venture under Texas law. Consultants and Meredith are co-venturers in the Putative Debtor.

6.   Prior to the Petition Date, WNB extended certain financial accommodations (the "Secured Loan") to the Putative Debtor, and the Putative Debtor granted WNB certain security interests as consideration therefor. The Section 303 Motion (defined below) discusses the Secured Loan and the relevant security instruments in more detail (collectively, the "Loan Documents").

7.   Prior to the Petition Date, by notices dated June 7, 2017, July 11, 2017, and July 26, 2017, WNB declared an uncured Event of Default (as defined in the Loan Documents)

under the Loan Documents due to the Putative Debtor's failure to remit several required payments to WNB, each of which payments remains past-due and owing. On July 26, 2017, as a result of the uncured Events of Default, and prior to receiving notice of this Bankruptcy Case, WNB issued a notice of acceleration (the "Notice of Acceleration") under the Loan Documents declaring all amounts owing thereunder immediately due and payable.

8. On July 28, 2017, this Court entered its *Notice of Hearing on Involuntary Petition* [Docket No. 7] setting a hearing to consider approval of the Involuntary Petition.

9. On July 31, 2017, WNB filed its *Notice of Non-Consent to Unauthorized Use of Cash Collateral or Disposition of Collateral* [Docket No. 14].

10. On August 7, 2017, WNB filed its *Emergency Motion to Enforce 11 U.S.C. § 363 During the Gap Period Pursuant to 11 U.S.C. § 303(f)* [Docket No. 18] (the "Section 303(f) Motion").

11. On August 11, 2017, WNB filed its *Supplement to Woodforest National Bank's Emergency Motion to Enforce 11 U.S.C. § 363 During the Gap Period Pursuant to 11 U.S.C. § 303(f)* [Docket No. 34].

12. Also on August 11, 2017, this Court: (i) heard arguments and reviewed evidence on the Section 303(f) Motion; and, (ii) denied the Section 303(f) Motion for the reasons stated on the record, but without making any findings of fact or conclusions of law. On August 17, 2017, this Court entered its *Order Regarding Woodforest National Bank's Emergency Motion to Enforce 11 U.S.C. § 363 During the Gap Period Pursuant to 11 U.S.C. § 303(f)* [Docket No. 43] (the "Section 303(f) Order").

13. On August 15, 2017, after the close of business, Westwind Ranch, LP ("Westwind"), one of the non-petitioning joint venturers of the Putative Debtor, filed its *Notice of Issuance of Document Subpoena to Woodforest National Bank* [Docket No. 39] (the "Notice

of Issuance"), which include a subpoena duces tecum requesting the production of certain documents by WNB by August 29, 2017 at 10:00 A.M. (the "Subpoena"). Immediately after filing the Notice of Issuance, Westwind sent the Subpoena, by electronic mail, to WNB's attorney of record (the "E-mail"). The Subpoena proposes a response deadline of August 29, 2017 and includes requests that WNB provide Westwind with certain documents regarding: (i) valuation of certain collateral for the Secured Loan; (ii) communications with the principals of the Petitioning Creditors regarding the Putative Debtor, the Secured Loan, or any collateral therefor; and, (iii) internal memoranda related to the Secured Loan or any collateral therefor.

## IV.     GROUNDS FOR RELIEF

14.     The many defects of the Subpoena can be divided into three categories: (i) defective service; (ii) BLR 2004-1 defects; and, (iii) contested matter defects. When considering the volume of the defects, the Subpoena is hopelessly flawed. In fact, this Court should quash the Subpoena on the grounds of any one of the many defects.

**A.     The Subpoena Fails Because of A Primary, Facial Defect: Failure of Service**

15.     FRCP 45(b) governs the issuance of a subpoena. Pursuant to FRCP 45(b), made applicable to the issuance of subpoenas in a bankruptcy case by FRBP 9016, the party issuing a subpoena must: (i) have the subpoena properly served on the named person by delivering a copy to the named person; and, (ii) provide proof of the properly served subpoena by filing a statement of the server with the issuing court:

(b) Service

(1) *By Whom and How; Tendering Fees.* Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person . . .

(4) *Proof of Service.* Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.[3]

16. Typically, courts determine *service* as discussed in FRCP 45(b)(1) by reference to FRCP 4.[4] With regard to service of subpoenas on a corporation, partnership, or association, FRCP 4(h) dictates that, absent a law or waiver permitting otherwise, a serving party may complete service only by either: (i) abiding by the method of perfecting service of a summons under state law of the host jurisdiction of the district court exerting original jurisdiction over the matter; or, (ii) delivering a copy of the subpoena to an officer, a managing or general agent, or any other agent authorized to receive service by appointment or by law, provided in the last case that the server also mail a copy of the subpoena to the subpoenaed party if required by the statute authorizing an agent to receive service.[5]

17. Furthermore, FRBP 7004(h), notes that in a contested matter or an adversary proceeding—WNB is not currently a party to either a contested matter or an adversary proceeding—service on an insured depository institution (as defined in Section 3 of the Federal Deposit Insurance Act), such as WNB, must be accomplished by certified mail, unless: (i) the institution has appeared by its attorney, in which case, the attorney shall be served by first-class mail; (ii) the court orders otherwise after service on the institution by certified mail of an

---

[3] FED. R. CIV. P. 45(b); *see generally* FED. R. BANKR. P. 9016.

[4] *See Khachikian v. BASF Corp.*, No. 91-CV-573, 1994 U.S. Dist. LEXIS 2881, at *2–5 (N.D.N.Y. Mar. 4, 1994) (enumerating decisions and quoting Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2461 (1971) as supporting the same proposition).

[5] *See* Fed. R. Civ. P. 4(h).

application to permit service by first-class mail; or, (iii) the institution waives its entitlement to service by certified mail.[6] Under the Texas Civil Practices and Remedies Code ("CPRC"), which governs the host state of the district court exerting original jurisdiction over this matter, the Southern District of Texas, service upon a financial institution[7] may be perfected by either: (i) "serving the registered agent of the financial institution;" or, (b) "if the financial institution does not have a registered agent, serving the president or a branch manager at any office located in this state."[8]

18. Without a waiver of service under FRCP 4(d), a party issuing a subpoena must serve a named party personally or through an agent, as provided elsewhere in FRCP 4.[9] Although the Federal Rules do not provide for service by mail, they do provide a waiver-of-service procedure that may allow a party to deliver service by first-class mail. To obtain a waiver, the plaintiff must send, by first-class mail, the defendant the complaint, along with some additional information, two copies of a waiver form, and "a prepaid means for returning the form.").[10]

19. A party's attorney is not an acceptable agent for the purposes of FRCP 4, nor is e-mail an appropriate method of service.[11] The various parties eligible to receive service under

---

[6] *See* FED. R. BANKR. P. 7004(h).

[7] Under the Texas Finance Code, a *financial institution* is defined as, among other things, any bank insured under the Federal Deposit Insurance Act [12 U.S.C. § 1813(h)]. *See* TEX. FIN. CODE § 201.101(1)(A).

[8] TEX. CIV. PRAC. & REM. CODE § 17.028(b).

[9] *See generally Miller v. Baylor Coll. of Med. Fed. Credit Union*, No. H-09-1332, 2010 U.S. Dist. LEXIS 5070, at *1–2 (S.D. Tex. Jan. 22, 2010).

[10] *Khachikian*, 1994 U.S. Dist. LEXIS 2881, at *2–3 ("[FRCP 45] does not use the term 'personal service,' [but] courts have interpreted this language to require 'personal service' of a subpoena.") (enumerating decisions and Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2461 as supporting the same proposition); *Id.* at *3–4 ("In the present case, Mr. Khachikian has failed to comply with the requirements of Rule 45 in two significant ways. First, rather than serving his subpoena by personal service, he served it by mail."); *cf. Ortiz-Moss v. N.Y. City Dept. of Trans.*, 623 F. Supp. 2d 404, 407 (S.D.N.Y. 2008) (In an action related to the more lenient FRCP 5 (governing service of pleadings), holding that "[c]onsent to service by electronic means must be specifically agreed in writing.").

[11] A party may, however, waive service and permit the party's attorney to receive service on the party's behalf.

**WNB'S MOTION TO QUASH SUBPOENA**                                                                                           **PAGE 7 OF 19**
4831-0935-4829v.2
22510-35 8/22/2017

FRCP 4(e)(1) and 4(h), FRBP 7004(h), and CRPC § 17.028(b) do not provide for effective service to be made upon a party's attorney, unless there is a contested matter, but even then, only via first-class mail.  When addressing disputes regarding the adequacy of service made to a party's attorney, courts routinely hold that: (i) such service fails under FRCP 45(b); and, (ii) a subpoena so served must be quashed.[12]  Here service fails because Westwind sent the Subpoena to the wrong recipient by the wrong means under every possible circumstance.  That is, service is not permitted on WNB's counsel, and even if it is permitted under FRBP 7004(h), such service must be made by first-class mail, not e-mail.  Immediately after filing the Notice of Issuance, Westwind sent, by electronic means, the Subpoena to WNB's attorney of record.  Without a waiver of service, sending a document by electronic means fails under FRCP 4 as a matter of law.[13]

20.    Similar to the facts of the *Khachikian* case, Westwind sent the Subpoena by defective means to an ineligible recipient.  In *Khachikian*, the plaintiff sent a subpoena by mail to the defendant's attorney of record.[14]  In a motion to quash the subpoena, the defendant argued that the plaintiff failed to satisfy the requirements of FRCP 45 when serving the subpoena.[15]  The Court made two key findings: first, the court found that the plaintiff sent the subpoena through unauthorized means by sending the subpoena through the mail;[16] second, the court found that the plaintiff sent the subpoena to a recipient unauthorized to accept service by sending the subpoena

---

[12] *See Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) ("[T]he plaintiff asserts that the service of said subpoena [duces tecum] on plaintiff's counsel, as opposed to plaintiff himself, renders such service a nullity. . . . This subpoena was not served in conformity with the rule.  Hence, plaintiff's position is well taken."); *Khachikian*, 1994 U.S. Dist. LEXIS 2881, at *3–4 ("In the present case, Mr. Khachikian has failed to comply with the requirements of Rule 45 in two significant ways. . . . Secondly, he did not serve BASF, the party named in the subpoena.  Instead, he mailed the subpoena to BASF's attorney who is not one of the persons authorized by Rule 4(d)(3).").

[13] *See generally Miller*, 2010 U.S. Dist. LEXIS 5070, at *1–2.

[14] *Khachikian*, 1994 U.S. Dist. LEXIS 2881, at *1.

[15] *Id.* at *2.

[16] *Id.* at *4.

<u>WNB'S MOTION TO QUASH SUBPOENA</u>                                                                                      PAGE 8 OF 19
4831-0935-4829v.2
22510-35 8/22/2017

to the defendant's attorney of record.[17]  Westwind's method of sending the Subpoena substantially mirrors the key findings from the *Khachikian* decision: Westwind sent the Subpoena through electronic mail to WNB's attorney of record.  In the *Khachikian* decision, the court quashed the subpoena because of the failure of service.[18]  Accordingly, this Court should quash the Subpoena based on the same rationale: Westwind failed to properly serve the Subpoena, regardless of whether the Subpoena was issued under FRBP 2004 or in connection with a contested matter.

**B.  The Subpoena Fails Under Both of the Two Conceivable Grounds that Might Authorize Westwind to Issue the Subpoena**

21.  Westwind failed to specify the grounds under which it issued the Subpoena.  In this Bankruptcy Case, only two grounds have arisen that would permit Westwind to issue the Subpoena: (i) the authority of any party in interest to issue a subpoena pursuant to FRBP 2004; and, (ii) the only arguably currently pending contested matter, the Involuntary Petition.  Under both grounds, the issuance of the Subpoena fails for failure of service, as described above.  As discussed below, additional defects abound for each of the two conceivable grounds that might authorize Westwind to issue the Subpoena.

**i.  The Subpoena Fails Because of Several Defects Unique to a Subpoena Issued Pursuant to FRBP 2004**

22.  Assuming without conceding that Westwind issued the Subpoena pursuant to FRBP 2004, as again, it is not clear from the face of the Subpoena or the Notice of Issuance, the Subpoena fails because: (i) the Subpoena is overly broad in scope; and, (ii) Westwind failed to satisfy the requirements of BLR 2004-1.

---

[17] *Id.*

[18] *Id.* at *5.

**WNB'S MOTION TO QUASH SUBPOENA**  PAGE 9 OF 19
4831-0935-4829v.2
22510-35 8/22/2017

**(a)     The Subpoena Is Overly Broad**

23.     Under FRBP 2004, a party in interest may make a motion to examine any other party in interest.[19] The scope of such an examination has a broad reach, but important factors limit that reach to matters relating to the debtor's acts, conduct, property, liabilities, financial condition, and case administration:

> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.[20]

A party seeking an examination pursuant to FRBP 2004 must satisfy the burden of proving "good cause of the examination which it seeks."[21] Good cause may include seeking information necessary to establish a claim.[22]

24.     The Subpoena requests an overly broad volume of documents. Production of these documents would cause an excessive burden on WNB. Westwind failed to reasonably limit the Subpoena's document requests in time or scope, and many of the documents that Westwind requests relate only to internal compliance at WNB. Specifically, Westwind requests over forty-four months of WNB's internal memoranda regarding the Secured Loan or its collateral:

> You are commanded to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: . . . All . . . internal memoranda (1/1/14 to the present) regarding AEJV debt or collateral.[23]

---

[19] FED. R. BANKR. P. 2004(a).

[20] FED. R. BANKR. P. 2004(b). FRBP 2004(c) incorporates FRCP 45's standards for the issuance of a subpoena duces tecum by reference to FRBP 9016.

[21] *In re Express One Int'l., Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (quoting *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)).

[22] *Id.*

[23] Subpoena, at p. 1.

25. Similarly, the Subpoena's request for "communications with ** any petitioning partner, Bobby Steelhammer, or Michelle Miller regarding AEJV or collateral that secures its debt" are not narrowly tailored to address matters that might be related to the permissible items under FRBP 2004 such as: (i) the origination of the Secured Loan; or, (ii) the Default notices or Notice of Acceleration.[24] In contrast, many communications that the Subpoena requests include dialogue outside the scope of an FRBP 2004 examination, including communications such as servicing discussions, administrative assistance, underwriting matters, and all communications with Mr. Steelhammer and Ms. Miller unrelated to the Secured Loan and the collateral therefor. Simply put, the requests are not defined with sufficient particularity so as to narrowly construe the scope of any documents that may be relevant to and within the bounds of FRBP 2004.

26. Additionally, Westwind raises no grounds for good cause for the Subpoena in its Notice of Issuance as neither any claims asserted by WNB nor any matters pertaining to WNB's indebtedness are currently at issue in any live pleading before the Court or the Involuntary Petition. Indeed, the underlying purpose of any subpoena is not a roving expedition to feed a party's intellectual curiosity, but rather subpoenas are designed to further the ends of litigation. Yet, none of the issues set forth in the Subpoena are at issue in any litigation or contested matter. Because the Subpoena's requests are overly broad, Westwind cannot prove a prima facie case as to good cause for issuance. Because the Subpoena fails in scope and for want of good cause, this Court should quash the Subpoena.

### ii. The Subpoena Fails to Satisfy the Requirements of BLR 2004-1

27. In this Court, a party issuing an examination request under FRBP 2004 must comply with BLR 2004-1. To comply with the requirements of BLR 2004-1, the issuing party must: (i) conference with the named party of the examination request; and, (ii) provide the

---

[24] *Id.*

named party with reasonable time to respond to the final, valid examination request. Westwind failed to comply with both of these requirements.

### (a)    Westwind Failed to Confer with WNB Pursuant to BLR 2004-1(c).

28.    Under BLR 2004-1(c), a party seeking an examination pursuant to FRBP 2004 must conference with the named party. Failure to complete this condition precedent renders any discovery request a nullity:

> Conferences to arrange for an agreeable examination schedule are required. Failure to confer is grounds for a motion to quash and sanctions.[25]

Here, counsel for Westwind failed to confer with counsel for WNB regarding the Subpoena's document request prior to issuing the Notice of Issuance. Similarly, Westwind failed to attach a certificate of conference to the Notice of Issuance. These failures to satisfy the requirements of BLR 2004-1(c) render the Subpoena a nullity. Accordingly, this Court should quash the Subpoena.

### (b)    Westwind Failed to Satisfy the 14-Day Notice Period Pursuant to BLR 2004-1(d)

29.    Under BLR 2004-1, a party seeking an examination pursuant to FRBP 2004 must provide the named party of the examination with a minimum of fourteen (14) days to respond to a valid, enforceable examination request:

> Not fewer than 14 days written notice of a proposed examination must be given to the person or entity to be examined, its counsel, and to affected parties under BLR 9013-1(a). The notice must apprise the party of the scope of the examination and categories of documents to be produced. The notice must be filed.[26]

30.    Westwind failed to provide 14-days of notice for the Subpoena. In the Subpoena, Westwind proposed a response deadline of August 29, 2017; however, Westwind failed to

---

[25] BLR 2004-1(c).

[26] BLR 2004-1(d).

**WNB'S MOTION TO QUASH SUBPOENA**                                                                                              **PAGE 12 OF 19**
4831-0935-4829v.2
22510-35 8/22/2017

properly serve the Subpoena on August 15, 2017 (the last date that Westwind could serve the Subpoena to properly compel a response by August 29, 2017). To date, Westwind has not properly served the Subpoena.[27] Accordingly, the 14-day notice period has not yet begun to run as of the filing of this Motion, and thus, cannot possibly be set as August 29, 2017. Because Westwind failed to provide a valid 14-day notice period for WNB to respond to the Subpoena, the Court should quash the Subpoena.

### iii   The Subpoena Fails Because of Several Defects Unique to a Subpoena Issued in connection with a Contested Matter

31.   Alternatively, assuming, without conceding, that Westwind issued the Subpoena in connection with the Involuntary Petition, or some other supposedly contested matter, the Subpoena fails because of a failure of service as well as: (i) an overly broad scope, inclusive of documents irrelevant to the Involuntary Petition, or any other live, contested matter before this Court; and, (ii) an undue burden on a nonparty— WNB is not a Petitioning Creditor, has not joined the Petitioning Creditors in requesting the entry of an order for relief under the Involuntary Petition, and is not a party to any other live, contested matter currently pending before this Court.

#### (a)   The Subpoena Is Overly Broad and Seeks Irrelevant Information

32.   A subpoena issued in connection with a contested matter falls within the general limitations for a subpoena issued in litigation. A party issuing such a subpoena must reasonably tailor the subpoena to their legal arguments related to the contested matter.[28] Here, the Subpoena

---

[27] *See supra* part IV(A).

[28] *See generally Bagwell v. Rival Consumer Sales Corp.*, No. EP-06-CA-117-FM, 2006 WL 2883137, at *3 (W.D. Tex. 2006) (quashing a subpoena duces tecum as unduly burdensome and nothing more than a fishing expedition, where plaintiffs failed to show that the information was relevant to their claims or reasonably calculated to lead to admissible evidence); *Williams v. City of Dallas*, 178 F.R.D. 103, 112 (N.D. Tex. 1998) (quashing subpoena duces tecum because subpoena did not place any reasonable restrictions on requests or include specific documentary descriptions in requests).

requests information not reasonably relevant to the Petitioning Creditors' claims in the Involuntary Petition,[29] whether the Putative Debtor should be in bankruptcy (the subject of the Involuntary Petition), whether the Putative Debtor can satisfy its obligations as they come due, or any legal arguments of Westwind in support of or opposition to the any of the foregoing.  As described above, among other things, the Subpoena requests internal memoranda of WNB.  These memoranda, as documents internal to WNB, share no plausible connection to the merits: (i) of any assertion made by the Petitioning Creditors in support of the Involuntary Petition; or, (ii) any other argument by another party in support of or opposition to the Involuntary Petition.  Similarly, the Subpoena requests valuations and appraisals of the collateral securing the Secured Loan.  But again, a third party's documents related to valuation of collateral bear no relationship to arguments related to the Involuntary Petition and whether the Putative Debtor can satisfy its debts as they come due as an entity's balance sheet solvency has no bearing on its ability to be a debtor in bankruptcy.

33.     Additionally, the overly broad requests fail to narrowly target communications pertaining to the merits of arguments related to the Involuntary Petition.  That is, the Subpoena fails to define with specificity and particularity or appropriately limit its document requests to the types of communications and/or documents that might be within WNB's possession and which might be germane to the Petitioning Creditors' arguments, such as the validity, extent, priority, or amount of any claims asserted by WNB, the Notice of Acceleration, or an accounting of the loan balance.  Indeed, to the extent that communications and/or documents requested by Westwind

---

[29] WNB assumes that the Involuntary Petition is the only contested matter, if any, to which the Subpoena could relate as the only other live pleading currently pending before the Court is the *Opposed Motion of Advantage Energy Capital, LLC, Koko Palm Partners, LP, and Westwind Ranch, LP Seeking Dismissal of Involuntary Petition, Abstention, an Award of Damages, and to Compel Petitioning Partners to Post a Bond* [Docket No. 56] (the "Dismissal Motion"), to which no party has responded, which was not filed until three (3) days after the Notice of Issuance was filed, and which may be more appropriately styled as a response or objection to the Involuntary Petition, albeit by non-debtor parties.

are relevant, Westwind would be better served by issuing the Subpoena to the Petitioning Creditors who support the Involuntary Petition.

34. Because Westwind failed to reasonably limit the Subpoena's document requests and to define the same with specificity, particularity, and a narrowly tailored scope, they are largely overbroad, irrelevant, and fall outside the scope of information that Westwind may request through the Subpoena. Accordingly, the Subpoena must be quashed due to its overly broad requests and requests for irrelevant materials.

### (b) The Subpoena Creates an Undue Burden for a Nonparty to the Involuntary Petition

35. In addition to its overly broad and irrelevant requests, the Subpoena also suffers by imposing an undue burden on a nonparty to the Involuntary Petition. While it is a party in interest in this Bankruptcy Case, WNB is not a party to the Involuntary Petition because WNB neither filed, responded to, nor joined the Involuntary Petition, or any other currently live pleading in this Bankruptcy Case. Thus, to the extent that the Subpoena requests information related to contested matters that are not currently or that may never come before the Court, the Subpoena is untimely and inappropriate. Accordingly, WNB asserts its right to the protections afforded to nonparties in the context of the Subpoena.

36. An entity's non-party status "may be considered by the court in weighing the burdens imposed" by a subpoena.[30] Because the Subpoena suffers from a multitude of defects, any one of which merits an order to quash the Subpoena, WNB asserts that its status as a

---

[30] *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) (citing cases); *see Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009) ("Non-party status is significant factor to be considered in determining whether burden imposed by subpoena is undue."); *see also Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) ("Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."); *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005) ("In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'").

nonparty to the Involuntary Petition amplifies the undue burden that the Subpoena imposes on WNB. Again, the underlying purpose of any subpoena is not a roving expedition to feed a party's intellectual curiosity, but rather subpoenas are designed to further the ends of litigation. Yet, because none of the issues set forth in the Subpoena are at issue in any litigation or contested matter, the information sought by Westwind is only marginally relevant, at best, to the Involuntary Petition or any other contested matter that is pending before the Court. Accordingly, the Subpoena's burden on WNB vastly exceeds the useful nature of the information that Westwind might hope to attain. In keeping with precedent, this Court should quash the Subpoena as a result of this imbalance.

## V.   PRAYER

WNB respectfully requests the Court to: (i) grant this Motion; (ii) quash Westwind's Subpoena pursuant to FRCP 45(d)(3), or alternatively, enter a protective order pursuant to FRCP 26(c)(1) requiring Westwind to re-issue the Subpoena with requests narrowly tailored to glean information relevant to the Involuntary Petition, or another contested matter currently before this Court, so as not to cause an undue burden on WNB; (iii) award WNB its attorneys' fees and costs incurred in connection with prosecuting this Motion and responding to the Subpoena; (iv) order that WNB need not comply with the Subpoena; and, (v) grant WNB such other and further relief to which it may be justly entitled, both at law and in equity.

**DATED: August 22, 2017.**

[*Remainder of this page intentionally left blank*]

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By:  */s/ Sean B. Davis*
     Sean B. Davis
     Texas Bar No. 24069583
     S.D. Tex. No. 1048341
     Devin B. Hahn
     Texas Bar No. 24104047
     S.D. Tex. No. 2972718

**ATTORNEYS FOR WOODFOREST NATIONAL BANK**

### Certificate of Conference

Pursuant to FRCP 26(c)(1), made applicable herein pursuant to FRBP 7026 and 9014, I hereby certify that on August 22, 2017, I communicated with Annie E. Catmull, counsel of record for Westwind Ranch, LP ("Westwind"), via e-mail and telephone, to confer regarding the Notice of Issuance and the Subpoena, WNB's reasons for requesting that the Notice of Issuance and Subpoena be withdrawn, and the WNB's need to file a Motion for Protective Order if the Notice of Issuance and Subpoena were not withdrawn.  On each occasion, Ms. Catmull indicated that Westwind would not withdraw the Notice of Issuance or Subpoena, but rather Westwind might be amenable to more narrowly tailoring the scope of the Subpoena and/or extending the date by which WNB must otherwise respond, but that such modifications would not be made until after August 23, 2017. In light of the unclear nature of the Subpoena, WNB has nevertheless elected to file the Motion, out of an abundance of caution, in order to comply with BLR 2004-1 to the extent that the parties may not enforce the extension of any deadlines applicable thereunder without an order from this Court.  As such, WNB has been forced to file this Motion in accordance with and pursuant to FRCP 26(c)(1), 37(a)(5), and 37(d)(2), made applicable herein pursuant to FRBP 7026, 7037, and 9014.

     */s/ Sean B. Davis*
     One of counsel

## Certificate of Service

I, the undersigned, hereby certify that on August 22, 2017, I caused to be served the foregoing document and all attachments thereto by electronic transmission to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. I, the undersigned, hereby further certify that on August 23, 2017, pursuant to BLR 9013-1(f), the foregoing document and all attachments thereto, will be served on the parties listed on the attached service list by first class, U.S. Mail, with sufficient postage affixed thereto.

        /s/ Sean B. Davis
        One of Counsel

**Putative Debtor:**
Advantage Energy Joint Venture
Attn: James E. Gayle
6699 Port West Dr., Suite 160
Houston, TX 77024

**Petitioning Creditors:**
Consultants International Services LP &
Meredith Interests Consulting LP
c/o Hawash Meade Gaston Neese & Cicack LLP
Attn: Walter J. Cicack & Jeremy M. Masten
2118 Smith Street
Houston, TX 77002

Consultants International Services LP &
Meredith Interests Consulting LP
c/o Gregg K. Saxe
6666 Harwin Dr., Suite 600
Houston, Texas 77036

**U.S. Trustee:**
Office of the U.S. Trustee
Attn: Christine A. March
515 Rusk Ave., Suite 3516
Houston, TX 77002

**Other Creditors and Parties Requesting Notice:**
Michele O. Miller and Robert H. Steelhammer
c/o Meade & Neese LLP
Attn: Andrew K Meade
2118 Smith Street
Houston, Texas 77002

Robert H. Steelhammer
c/o Pendergraft & Simon, LLP
Attn: Leonard H. Simon & Robert L. Pendergraft
2777 Allen Parkway, Suite 800
Houston, TX 77019

Michael J. McGhan
3465 Overbrook
Houston, Texas 77027

MJMC Enterprises, LLC
Attn: Michael J. McGhan
3465 Overbrook
Houston, Texas 77027

KoKo Palm Partners, L.P.
Attn: James E. Gayle
6699 Portwest, Suite 160
Houston, Texas 77024

Red River Compression Services, LLC
Attn: James E. Gayle
6699 Portwest, Suite 160
Houston, Texas 77024

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Larry J. Martin
c/o Reynolds Frizzell, LLP
Attn: Jean C. Frizzell
1100 Louisiana St., Suite 3500
Houston, Texas 77002